UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NUMBER 1:24-CV-80-GNS-LLK

JOHN M., *pro se*                                                                                           PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security                                                                DEFENDANT

REPORT AND RECOMMENDATION

On March 22, 2023, Plaintiff John M. filed this *pro se* Social Security disability benefits appeal.[1] At issue is whether the Administrative Law Judge ("ALJ") who heard the case at the agency level erred in finding Plaintiff not disabled and therefore not entitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon *pro se* Plaintiff's Fact and Law Summary with Memorandum in Support [DN 10], the Commissioner's Fact and Law Summary in opposition [DN 12], Plaintiff's Fact and Law Summary Reply [DN 13], and the administrative record [DN 5].[2] Because Plaintiff is proceeding *pro se*, his filings and arguments are liberally construed. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (citations omitted). On September 24, 2024, the District Court referred this matter to the undersigned United States Magistrate Judge for Report and Recommendation as authorized by 28 U.S.C. § 636(b)(1)(B). The case is now ripe for determination.

Plaintiff's Fact and Law Summary [DN 10] identifies three findings in the ALJ's Decision which he believes are not supported by substantial evidence or in accord with the proper legal

---

[1] Plaintiff is a retired veteran of the United States Armed Services who served for twenty-one years as a nuclear counter proliferation specialist. [DN 10-1] at 1. His educational background includes a BA in Chemistry and an MS in Environmental Management. *Id*.
[2] References to the administrative record [DN 5] will use the Court's docket and page numbering from the header located in the top of the each document in this case.

standards. However, Plaintiff's supporting Letter [DN 10-1] does not clearly correspond with those contested findings. And while issues mentioned in only a perfunctory manner without accompanying development are usually deemed waived, the undersigned has gone to additional effort to construe Plaintiff's arguments generously. After carefully examining the entire administrative record, the arguments of the parties, and the applicable authorities, the undersigned is of the opinion that the ALJ's Decision is supported by substantial evidence. Accordingly, the recommendation is that the District Court AFFIRM the Commissioner's Final Decision denying benefits and CLOSE this case.

**Administrative History**. Plaintiff filed his Title II DIB application on March 23, 2023, alleging disability from March 14, 2023, as a result of lumbar spinal fusion, degenerative arthritis, degenerative disc disease, heart issues, an aneurysm, and cervical spine issues.[3] [DN 5] at 230. He was 46 years old at the time of filing. His claims were denied initially on June 28, 2023, [DN 5] at 96, and upon reconsideration on August 7, 2023, [DN 5] at 103. Plaintiff requested a hearing before an ALJ which was granted and held telephonically before ALJ Robert B. Bowling; Jonathon Casey Smith represented Plaintiff at the hearing, though his attorney was noted as Alison M. Sparks. Tina Stambaugh, an impartial vocation expert, also participated in the hearing. [DN 5] at 22. The ALJ evaluated the evidence of record using the requisite five-step sequential evaluation process, which applies in all Social Security disability cases. On January 30, 2024, the ALJ issued his written Decision [DN 5] at 22-32 and found that Plaintiff was not disabled.

---

[3] Plaintiff had previously filed for Social Security benefits and was denied in a written decision on July 15, 2022, by ALJ Karen Jackson who found that he remained capable of performing a range of light work. [DN 5] at 70-84. However, because the present claim involves adjudication of disability for a time period not addressed in the prior Unfavorable Decision, and because the record includes additional evidence, ALJ Bowling determined that he would make a new residual functional capacity finding. [DN 5] at 22.

2

Plaintiff timely requested review of the ALJ's Decision by the Appeals Council, and on April 23, 2024, the Appeals Council denied Plaintiff's request for review. [DN 5] at 5. The ALJ's Decision became the final Decision of the Commissioner subject to judicial review in this Court, and Plaintiff's *pro se* appeal to this Court followed. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

**The ALJ's Decision**. The ALJ's Decision [DN 5] at 22-32 denying Plaintiff's claim for DIB Title II benefits was based upon the five-step sequential evaluation process which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security act through December 31, 2026, and that he has not engaged in substantial gainful activity since March 14, 2023, the alleged onset date (20 CFR 404.1571 *et seq*.). [DN 5] at 24-25.

Second, the ALJ found that Plaintiff has the following severe, or vocationally significant impairments: degenerative disc disease, chronic ischemic heart disease, and abnormality of a major joint. (20 CFR 404.1520(c)). [DN 5] at 25.

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). [DN 5] at 26.

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c). The ALJ made the following RFC determination:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally lift or carry twenty pounds; clamant can frequently lift or carry ten pounds; claimant can sit for six hours in an eight-hour workday with normal breaks; claimant can stand or walk for four hours in an eight-hour workday with but for thirty minutes at a time; claimant can push or pull equal to their lift and carry amounts with the bilateral upper and lower extremities; claimant an frequently reach overhead with the bilateral upper

3

> extremities; claimant can never climb ladders, ropes and scaffolds; claimant can occasionally climb ramps and stairs; claimant can occasionally stoop, knee, crouch, and crawl; claimant can only occasionally be exposed to extreme cold, extreme heat, vibration, and to hazards such as the use of moving machinery and to unprotected heights.

[DN 5] at 26.

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work (20 CFR 404.1565). [DN 5] at 30. The ALJ further found that Plaintiff was born on May 3, 1976, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563); that claimant has at least a high school education (20 CFR 404.1564); and that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

Fifth, the ALJ found that, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a) (including mailroom clerk, office helper, information clerk, general clerical worker, information clerk and inspector). [DN 5] at 31.

**Standard of Review**. The task of this Court in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). This Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*.

Because Plaintiff filed his DIB claim in March of 2023, the new rules for weighing medical opinions apply. See 20 C.F.R. § 404.1520c ("For claims filed … on or after March 27, 2017, the rules in this section apply.") Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source. 20 C.F.R. § 404.1520c(a). In determining the persuasiveness of a medical opinion, an ALJ must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors." 20 C.F.R. § 404.1520c(a). However, the ALJ need only explain how he/she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(c)(2). Without the treating physician rule, the applicable regulations allow the ALJ "to evaluate the persuasiveness of submitted medical opinions, with particular focus on their supportability and consistency." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645 at *6 (6th Cir. June 12, 2024).

**Relief Sought by Plaintiff**. At some point between the Appeals Counsel review and appeal to this Court, Plaintiff began to represent himself. It is somewhat unusual for a claimant to proceed *pro se* at this stage in a Social Security appeal. Plaintiff's Fact and Law Summary [DN 10] indicates that he contests the ALJ's findings at Steps 3, 4 and 5: that his impairment(s) meet or medically equal a listed impairment; that he does not retain the residual functional capacity for light work; and that there are not jobs that exist in significant numbers in the national economy

5

that the claimant can perform. The three-page letter Plaintiff submitted in support of his Fact and Law Summary [DN 10-1] consists primarily of recitation of his medical history and disputes the ALJ's weighing of the medical evidence. He argues that the Social Security medical records reviewers (state agency physicians) erred in their evaluation of his medical impairments and that their opinions were not valid because they were not supported by an evaluation to determine their validity. [DN 10-1] at 3. The remainder of Plaintiff's Fact and Law Summary filing consists of forty (40) pages of medical records from the Cleveland Clinic which post-date the ALJ's Decision, an undated Army-generated Physical Profile Record, VA medical records, and a post-Decision Medical Source Statement from neurosurgeon Dr. Amr El-Naggar opining that Plaintiff should be considered "permanently and totally disabled." [DN 10-2]. In another document/letter entitled "Fact and Law Summary" addressed to Judge Stivers and dated December 9, 2024 [DN 13] (and which the undersigned loosely construes as Plaintiff's Reply brief), Plaintiff offers a more organized argument which provides an introduction, a discussion of the Court's standard of review, a summary of the medical evidence he believes establishes his disability, and specific ways in which he believes the ALJ erred in finding him not disabled.

**Misconceptions about the Social Security Determination Process.** Before addressing the three enumerated findings of error that Plaintiff identified in his Fact and Law Summary, the Court will briefly address several misunderstandings of the law noted in Plaintiff's filings.

1.  <u>This Court's review is limited to the evidence that was before the ALJ.</u> Plaintiff appended some 40 pages of medical records to his Fact and Law Summary [DN 10-2]. With a few exceptions, most of those records post-date both the Hearing and ALJ Decision. It is only in very specific circumstances that this Court is allowed to review and consider records that are outside of the Administrative Record. When trying to introduce new evidence, a Plaintiff must prove: 1) there

is new evidence that was unavailable at the time the ALJ issued his written decision; 2) the new evidence is material; and 3) there is good cause for the failure to incorporate the evidence into the record in a prior proceeding. Plaintiff failed to make these showings, and the Court must decline to consider those records.

      2.     <u>The Social Security Administration is not required to have Plaintiff examined by a Social Security physician (or other personnel) in order to evaluate his medical conditions and for the ALJ to make Residual Functional Capacity findings</u>. Plaintiff bases much of his argument contesting the ALJ's RFC findings on the fact that the reviewing state agency physicians did not review all of his medical records before formulating their opinions, nor did they—or any other physician on behalf of the Social Security Administration—examine him. As to the state agency physicians' reviews at the initial and reconsideration levels, Plaintiff is correct that neither of those physicians had his entire medical record before them. In fact, state agency reviewing physicians rarely have a claimant's complete medical record before them when making their determinations. But the ALJ did have the full medical picture from both the medical records and other evidence, such as Plaintiff's Hearing testimony.

      Plaintiff is under the mistaken impression that because the Army, the Veterans Administration, and the Social Security Administration are all United States Government entities that their records are all readily accessible to each. But the regulations place responsibility upon Plaintiff to inform and submit to the Social Security Administration all evidence he knows of that relates to his alleged disability: "We will consider only impairment(s) you say you have or about which we receive evidence." 20 C.F.R. § 404.1512. "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant … the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y*

7

*Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). The regulations indicate that, "[g]enerally, [the Commissioner] will not request a consultative examination until [they] have made every reasonable effort to obtain evidence from your own medical sources." 20 C.F.R. § 404.1512(b)(2). "If [the] medical sources cannot or will not give [the ALJ] sufficient medical evidence about [an] impairment . . . to determine whether you are disabled or blind, [the ALJ] may ask [the claimant] to have one or more physical or mental examinations or tests." 20 C.F.R. § 404.1517. With regard to how the Commissioner considers evidence, the regulations specifically address incomplete or inconsistent evidence, noting that where it is insufficient, it does not contain all of the information needed to make a determination or decision. 20 C.F.R. § 303.1520b(b)(1).

Here, there was sufficient evidence in the record before the ALJ to make a determination as to Plaintiff's disability claim. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x, 359, 364 (6th Cir. 2014). And while there are special circumstances in which the Sixth Circuit has held that an ALJ must "exercise a heightened level of care" in developing the record, that heightened care does not apply to claimants who are represented by counsel (as Plaintiff was throughout the administrative proceedings), *Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x 456, 459 (6th Cir. 2008). Finally, it should be noted that the residual functional capacity finding—what the claimant can still do despite his physical limitations—is an issue exclusively reserved for the ALJ to determine. The ALJ considers all evidence in the case record, including any prior administrative medical findings, medical source statements, and the claimant's subjective allegations. 20 C.F.R. § 404.1520c, 404.1529(a). The Court finds, for all these reasons, that a consultative examination was neither required nor warranted in this case.

3. <u>The ALJ and Social Security Administration are not bound by the findings of disability made by the Army and Veterans' Administration.</u> Plaintiff indicates that both the Army and the Department of Veterans Affairs have determined that he is permanently and totally disabled, and that "[t]he Army follows the same guidelines in applying limitations on the ability to perform work that the Social Security Administration uses." [DN 13] at 2.

The Social Security disability rules are clear regarding decisions of other governmental agencies and nongovernmental entities:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled …. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1)-(4).

20 C.F.R. § 404.1504.

The Social Security Administration follows its own rules and regulations that are separate and distinct from those of the Army and Veterans' Administration. One major difference between the VA's disability system and Social Security's is that the VA expresses disability as a percentage of diminished earning capacity "applied to a hypothetical average person's ability to earn income," whereas Social Security "does not assess degrees of disability" and determines whether the applicant can make an adjustment that allows him to perform "any other substantial gainful work that exists in the national economy." *Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 311 (6th

Cir. 2018). It is simply not accurate to conflate Social Security disability standards with those of other governmental entities.

4. <u>Plaintiff argues that the ALJ and state agency physicians mischaracterized medical evidence pertaining to his heart condition and ignored Cleveland Clinic records</u>. He takes issue with the ALJ's reference to a diagnosis of ascending aortic aneurysm and moderate mitral regurgitation and argues that this is proof that the ALJ ignored the diagnoses from Cleveland Clinic records. However, the terms ascending aortic aneurysm or "AAA" were used throughout the medical records as various heart specialists explored and monitored Plaintiff's heart condition. [DN 5] at 325. Ultimately, Plaintiff was diagnosed with a thoracic aortic root aneurysm (which is a distinction based upon the specific location of the aneurysm within the aorta). It does not logically follow that the ALJ in correctly quoting VA medical diagnoses erred in his review of records from the Cleveland Clinic. Furthermore, reference to a 3.9 cm aneurysm measurement does not mean that the state agency physicians "diagnosed a non-condition" when referencing VA diagnostic records in their reports. Ultimately, it is Plaintiff who bears the burden of proving his severe impairments and resulting limitations; the mere diagnosis of a condition says nothing about its severity. See *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

The Court has undertaken an extensive review of the administrative record and found several references to the dimensions of the aneurysm as "stable" with recommendations of continued surveillance, [DN 5] at 325, 424, 849-853. Plaintiff indicates that the surgery was "a matter of living or dying" when the record reflects that Plaintiff "would prefer to undergo elective surgery and not wait for continued surveillance and also would like to move on with his life" without significant cardiac restrictions. [DN 5] at 853. The ALJ's Decision accurately notes that Plaintiff reported a referral for open heart surgery, when "the evidence reflects that the claimant

10

received a recommendation for only conservative treatment." ALJ's Decision, [DN 5] at 28. While Plaintiff dislikes the portions of the evidence referenced pertaining to his heart condition, the Court has carefully reviewed the medical citations made in the ALJ's Decision and finds no misrepresentation.

CONTESTED FINDING NO. 1

> Plaintiff contests the ALJ's finding that he does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

Plaintiff faults the ALJ Decision for failing to find his impairment meets or medically equals the severity of a listed impairment, however he has made no effort to show how any of his impairments meet a listing. Plaintiff carries the burden of proving that the clinical criteria of a listing are satisfied, and this burden is construed strictly because the Listing represents an automatic screening in of an impairment as disabling (independently of any other medical or vocational factor). See *Sec'y of Health & Human Services v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [a listed impairment's] criteria, no matter how severely, does not qualify."); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("It is insufficient that a claimant comes close to meeting the requirements of a listed impairment.").

In addition, it is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Plaintiff has failed to develop this argument and has therefore waived it.

CONTESTED FINDING NO. 2

Plaintiff contests the ALJ's finding that he has the residual functional capacity to perform a range of light work.

The Social Security regulations do not require that the ALJ's RFC findings be based upon any specific physician findings: the RFC determination is the ALJ's ultimate determination of what the claimant can still do despite his physical limitations, and the finding is based upon consideration of medical source statements, prior [Social Security] administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). That is, the RFC is the exclusive province of the ALJ who at the time of his review, did have access to the entire record. In this instance, the ALJ had the opportunity to review the medical and non-medical evidence, decide which findings to accept or reject, and formulate an RFC finding that is supported by the evidence.

Plaintiff argues that the disabling opinion of his treating physician Amr I. El-Naggar, M.D., "a neurosurgeon with more than forty-five years of specialty expertise," should have been given controlling weight. [DN 13] at 2. The ALJ considered both of Dr. El-Naggar's opinions pertaining to Plaintiff's physical limitations: 1) that he should avoid lifting anything over ten pounds; and 2) that he should be considered permanently and totally disabled. With regard to the ten-pound lifting limitation, the ALJ noted that it was supported by the evidence at the time it was made because of Plaintiff's recent spinal fusion, but that it was inconsistent with the record as a whole, and that post-surgery Plaintiff "reported ninety-five percent improvement in his lower back pain, and an improved ability to walk," with "five out of five strength." ALJ's Decision, DN 5 at 29. Dr. El-Naggar's opinion that Plaintiff is permanently and totally disabled was rejected because it constitutes a dispositive finding on an issue reserved to the Commissioner. The ALJ accurately observed that by regulation 20 CFR 404.1527(e)(1)(3), such disabling opinions are not entitled to

any special persuasiveness. *Id*. Here, the reasoning given by the ALJ builds an accurate and logical bridge between the evidence and the result. *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). The ALJ's finding that the medical opinions of Dr. El-Naggar are "not persuasive" [Doc. 10 at 153] comport with applicable standards because the ALJ explained how he considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff further argues that the ALJ's RFC findings are faulty because they are based upon "cherry picked" evidence. This argument is unpersuasive because it is actually the ALJ's duty to sift through all the evidence of record—medical signs and laboratory findings, medical history and the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, symptoms—and assess what abilities the claimant retains for performing work. The process of formulating an RFC may involve picking and choosing on the part of the ALJ. Most disability claims have medical and other evidence that could support findings either way; it is the ALJ's job to weigh that evidence and articulate the reasons for either accepting or rejecting it. As the Sixth Circuit has explained, "[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). "[A]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x 586, 589 (6th Cir. 2019), and he has not carried that burden in this case.

CONTESTED FINDING NO. 3

Plaintiff contest the ALJ's finding that considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

Plaintiff contests the ALJ's finding that there is any work that he can do in the national economy, stating "at step 5, other work is also precluded by the restrictions from my spine and due to the recent heart surgeries." [DN 10-1] at 3. These arguments appear to relate back to his disagreement with the ALJ's RFC findings and not to his Step Five findings. Nonetheless, the Court has reviewed the hearing transcript and finds that the vocational testimony offered meets the Social Security Administration's burden of proof that other work exists in significant numbers in the national economy that Plaintiff can still perform. Notably, the RFC findings for a limited range of light work with a thirty-minute sit/stand/walk limitation eroded the jobs identified by the vocational expert by fifty percent; the Court finds no error with the vocational hypothetical posed.

"A vocational expert's [VE's] testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Masters v. Comm'r*, 707 F. App'x 374, 380 (6th Cir. 2017) (quoting *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)). While it is true that an ALJ may rely on a VE's response to a hypothetical question only if the question accurately portrays the claimant's impairments, the "ALJ is required to incorporate only those limitations that he or she accepted as credible." *Id.* (citing *Casey v. Sec'y*, 987 F.2d 1230, 1235 (6th Cir. 1993)). Plaintiff has failed to put flesh on the bones of this argument, *Moore v. Comm'r*, 573 F. App'x 540, 543 (6th Cir. 2014) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)), but the Court nonetheless finds the Commissioner has met its Step 5 burden.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence and comport with applicable law. As such, the Magistrate Judge RECOMMENDS that the Court AFFIRM the final decision of the Commissioner, and judgment be GRANTED for the Commissioner.

## NOTICE

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).

August 19, 2025

Copies to:   Counsel of Record

Lanny King, Magistrate Judge
United States District Court